MARGARET GERATY, an Infant, by JAMES A. GERATY, her Guardian ad Litem, Respondent, *v.* THE NATIONAL ICE COMPANY of New York, Appellant.

*Negligence — ice from an ice wagon falling upon a passer-by — deviation by a servant from the direct route — its effect upon the master's liability — injury occasioned by the servant's supplying ice, not by the master's direction — complaint of a guardian ad litem as evidence.*

In an action brought against an ice company to recover damages for injuries sustained by the plaintiff, who, while crossing a street in the city of New York at the back of a heavily-loaded ice wagon, belonging to the defendant, was struck by a cake of ice which either fell from the wagon as it was started up with a jerk, or, while being delivered, slipped from the tongs and fell upon the plaintiff, it appeared that the driver of the wagon in question, who with a helper was on his way from the defendant's storehouse to deliver the ice at the Grand Central Station, drove aside from the direct route and stopped on a side street for a short time where, there was evidence tending to show, the men, upon their own responsibility, delivered some ice to a dealer.

Upon the trial the question whether the wagon was negligently loaded when it left the defendant's storehouse was submitted to the jury, who found upon that question in favor of the plaintiff.

The defendant requested the court to charge that if the jury believed that the employees were unloading ice from the truck at the time of the accident, outside of any duty on their part to the defendant, they must find for the defendant, and also that, if they believed that the driver and his helper, for the purpose of unloading ice or making a delivery at any place other than the Grand Central Depot, went to the place of the accident in question, and while there so conducted themselves that an accident happened to the plaintiff, the defendant was not responsible for such acts, and the jury must find for the defendant.

The judge refused the requests, but did instruct the jury that if the accident happened while the driver was actually handling ice and taking it out of the

wagon at that particular point, the plaintiff could not recover, because there was no evidence of any negligent handling at that time.

*Held*, that the charge as given contained instructions upon the material fact of the case, and that the defendant had the benefit of this instruction and that the reason given for it was not a ground of complaint.

That the request went too far in stating that, if the accident happened at that place, the defendant was not responsible, without regard to the question whether the defendant's employees were unloading ice or not;

That the fact that the defendant's employees had, for purposes of their own, deviated from the direct route in delivering the ice, did not of itself relieve the master from liability, although such liability might be suspended during the time the employees prosecuted their own affairs, as a liability would attach again immediately after the driver, in the prosecution of the master's business, resumed his course to the station, since at that time the load was in the same defective condition in which it started, and no act of the employees in the meantime had operated to increase the danger from the negligent loading.

The original complaint, verified by the guardian *ad litem* of the plaintiff, which had been replaced by an amended complaint, was read to the jury by the defendant, but the court, at the plaintiff's request, charged them that the fact that the guardian *ad litem*, in the original complaint, had stated facts in regard to the way in which the accident occurred differently from the way in which he stated them in the amended complaint, could not be considered by the jury upon the question as to the manner in which the accident happened.

*Held*, that such charge afforded no ground for exception on the part of the defendant.

APPEAL by the defendant, The National Ice Company of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of October, 1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 22d day of October, 1896, denying the defendant's motion for a new trial made upon the minutes.

*William Allen Butler* and *John Notman*, for the appellant.

*G. Washbourne Smith*, for the respondent.

RUMSEY, J.:

On the 25th of August, 1895, the plaintiff, a child aged nine years, while crossing on Forty-third street from the north to the south side, a short distance west of Third avenue, was struck by a heavy cake of ice which fell upon her from the defendant's wagon, and was very seriously injured. In an action brought to

recover damages for these injuries, she had a verdict upon which this judgment was entered, and the court denied the motion for a new trial. The appeal from that determination coming on to be heard here is based largely upon the proposition that, at the time this injury happened to the plaintiff, the defendant's employees, who were in charge of the wagon from which the ice fell, were not engaged in the master's business, so that it was not liable for the condition of affairs by means of which the accident came to occur. Several different points are argued by the appellant's counsel upon this branch of the appeal, in each of which this question is presented in some way or other, so that the determination of this question will practically decide the appeal.

The facts, so far as this question is concerned, are in small compass. Sweeney was the driver and McQuade the helper upon one of the defendant's large trucks, which was used in the transportation of ice from the defendant's storehouse to various places where it was needed. On the morning of the 21st of August, 1895, these two men started with their truck laden with ice from the storehouse of the defendant to deliver the ice at the Grand Central Station. The ice was so loaded upon the truck that it was likely to slip off in case of a sudden movement of the truck, and there was, as the jury found, evidence which warranted them in concluding that the ice was negligently loaded, and that this negligent loading of the ice was the cause of the injury to the plaintiff. The ice yard of the defendant was on the corner of Lexington avenue and Forty-seventh street, and the direct route to the destination of the truck was down Lexington avenue to Forty-second street, thence west on Forty-second street to Vanderbilt avenue, then up Vanderbilt avenue to the place of delivery. The route actually taken was down Lexington avenue to Forty-third street, thence through Forty-third street to Third avenue, where the truck was stopped for some short period of time. It was at that place that the accident happened, and just what occurred there is the subject of conflicting testimony. The driver of the truck and McQuade, the helper, testify that they stopped their horses and truck near the corner of Forty-third street and Third avenue while they went to an adjoining restaurant to get their breakfast. They say that when they came back they got upon the truck and started to go to the place where

the ice was to be unloaded; that the truck was started with a jerk, as a consequence of which a cake of ice, lying loose upon the top of the load, slipped off and struck the plaintiff who was running along past the back end of the wagon. This testimony as to the way in which the accident occurred was corroborated by several witnesses. On the other hand, a witness for the defendant swore that these two men, after stopping the truck near the corner of Third avenue and Forty-third street, began to deliver ice to a small dealer, whose place of business was at that point, and as they were taking a cake of ice out of the wagon the tongs slipped and it fell upon the plaintiff and thus the injuries were inflicted.

The defendant requested the judge to charge that, if the jury believed that Sweeney and McQuade were unloading ice from the truck at the time of the accident, outside of any duty on their part to the defendant, they must find for the defendant; and also that, if they believed that the driver and his helper, for the purpose of unloading ice or making a delivery at any place other than the Grand Central Depot, went to the place of the accident in question, and while there so conducted themselves that an accident happened to the girl, the defendant is not responsible for such acts and the jury must find for the defendant. The judge refused to charge either of these requests, as he did several others, involving similar propositions. But he did charge the jury that, if this accident happened while the driver was actually handling ice and taking it out of the wagon at that particular point, the plaintiff could not recover, because there was no evidence of any negligent handling at that time. The defendant insists that it was entitled to a more particular charge upon this subject, and the question is whether this contention of the defendant is sustained by the law.

It is the rule, no doubt, that a master is not necessarily relieved from responsibility for an injury resulting from the negligence of his servant simply because the servant is at the time acting in disobedience to the master's order. The question in every case is whether the act he was doing was one in prosecution of his master's business, not whether it was done in accordance with his instructions. If the act was one which, continued until the termination, would have resulted in carrying out the object for which the servant

First Department, April Term, 1897.          [Vol. 16.

had been employed, the master would be liable for whatever negligence might take place during its performance, although the servant in doing it was not obeying the instructions of the master, or, although he had deviated from the route prescribed by the master for the purpose of doing some act of his own, but yet with the intention at the same time of pursuing his master's business. (*Quinn* v. *Power*, 87 N. Y. 535, 539.) The rule, as laid down by the latest cases in the English courts, is that a master is responsible for an injury resulting from the negligence of his servant while driving his cart, provided the servant is at the time engaged in his master's business, even though the accident happens in a place to which his master's business did not call him. But if the journey upon which the servant starts be wholly for his own purposes and without the knowledge and consent of the master, the latter will not be liable. (*Mitchell* v. *Crassweller*, 13 C. B. 237; *Storey* v. *Ashton*, L. R. [4 Q. B.] 476.) This also is the rule laid down in this State. (*Cosgrove* v. *Ogden*, 49 N. Y. 255.) In that case it is said that the test of the master's responsibility for the act of his own servant is whether the act was done while the servant was engaged in the prosecution of the business which he was employed to do. In this case the act that the servant was employed to do was to take this ice from its warehouse to the Grand Central Station. The route taken was not the direct route. But that fact of itself does not relieve the master from his liability. Within the cases above cited the liability still continues unless the deviation is made, not in the prosecution of the master's business, but for some different and other purpose. The distinction is well illustrated in the cases of *Cavanagh* v. *Dinsmore* (12 Hun, 465) and *Sheridan* v. *Charlick* (4 Daly, 338), in which the servant, having been directed to use his master's horse and carriage for a particular purpose and then to put it up in the stable, instead of doing so, after the master's business had been performed, went off in another direction in the prosecution of his own affairs and for his own purposes. In those cases it was held that the enterprise undertaken by the servant, during which the accident happened, being solely for his own purposes, the defendant was not responsible for it. In this particular case, so long as Sweeney and McQuade were engaged in taking this ice to the Grand Central Station, they were engaged in the prosecution of

the master's business, and it was liable for their acts. The liability ceased, if at all, only when they were not engaged in taking the ice to the place where they were directed to take it.

According to the evidence of the defendant's witness they stopped near the corner of Forty-third street and Third avenue for the purpose of unloading some of this ice. Up to that time they had been proceeding in the business in which they were engaged. While they stood there unloading the ice, if they did do so, they were undoubtedly not engaged in the master's business and were acting in their own behalf, and at that time it is quite clear that the master was not liable for the unloading in which they were engaged. The jury were so instructed by the court. They were told that if the accident happened while these men were unloading the ice the defendant was not responsible. It is true that the reason given by the court was not the one insisted upon by the defendant, but that was a matter of no importance. The material fact was that if the jury found that the accident was caused by unloading the ice that was the end of the liability so far as the defendant was concerned, and if the defendant had the benefit of that instruction, it had no right to complain with regard to the reasons which were given for it.

But the request for a charge on the part of the defendant went further than that. It was that, if the accident happened at that place, the defendant was not responsible, without regard to the question whether Sweeney was unloading ice or not. This request, we think, went too far. There could have been but two ways, under the testimony, in which this accident occurred. One was by the slipping of the ice from the tongs while it was unloading, and the other was because it slipped off of the wagon after Sweeney had started on his way to the Grand Central Station. The defendant was sufficiently protected by the charge if the jury found that the accident was caused in the way first mentioned. We think that the defendant was not entitled to be relieved from liability if the accident happened after Sweeney had taken his place upon the wagon and resumed his course toward the Grand Central Station, and the accident was caused by the slipping of the ice off from the wagon. At that time Sweeney, whatever may have been his object in deviating from the direct route, was again proceeding to deliver the ice.

He had accomplished whatever purpose he intended to accomplish by the deviation, and had resumed the execution of the work which the defendant had intrusted him to do. The essential conditions at that time were the same as they would have been had he gone on the direct route. The ice which had been loaded upon the wagon improperly still continued to be thus loaded, and there was no more reason to suppose that injury would happen on account of it at that place than if he pursued the direct route. If he had been forced by a blockade of the streets to turn out of the direct route and go in the direction in which he did go, no one would doubt that the master would be liable, because he would have been engaged, when he was moving in that direction, in the transportation of the ice to the place where it was intended that he should take it. But that is precisely the thing that he was doing, and his doing it through this particular street did not add at all to the liability of the defendant, and did not enlarge the danger which any passer-by encountered from the way in which it was loaded. If Sweeney and McQuade had abandoned the wagon at the corner of Third avenue and Forty-third street, and another servant had been sent to take it from that place to the place where the ice was to be unloaded, no doubt the defendant would have been liable for what happened. Why? Because they were carrying the ice to its place of destination in the prosecution of the master's business. But that is precisely what Sweeney was doing. It cannot be that if a servant makes a deviation from his route for his own purpose, on account of which the master ceases to be liable, there is no assumption of liability again until the servant finally reaches his destination. If that were so the master would not be liable, although the servant was proceeding by the most direct route to his destination after the purposes of his deviation had been accomplished. We think that cannot be the rule, but that if the master's liability has been suspended while the servant has deviated from the route for his own purpose, the liability again attaches after he has resumed the prosecution of the master's business, if the conditions which then existed have not been altered by the act of the servant so that some new negligent cause has intervened, for which the master was not originally liable. That is not this case. At the time when Sweeney resumed his journey, at the corner of Third avenue and Forty-third street, the load was

in the same defective condition as it was when he started, and there was the same reason to anticipate that an accident would happen as there was when he left the yard in the first place. No act of Sweeney's, occurring during the deviation, had operated in the slightest degree to increase the danger of harm from the negligent loading, and, therefore, when he again assumed to go on his master's business after the deviation, there had been no increase of danger arising from his negligent act by reason of which the probability of accident had been enhanced. The original defect, and that alone, was then, as before, the thing to be feared, and for all practical purposes the same conditions existed that existed when Sweeney had started from the yard. The ice was defectively loaded, and he was proceeding with it to the place where it was to be unloaded. If there had been a suspension of liability, that suspension had come to an end because he had assumed again the prosecution of his master's business.

It appeared in the case that when the action was first brought there had been served a complaint, verified by the guardian *ad litem*, alleging, upon information and belief, that the accident occurred while Sweeney was throwing the cake of ice from the wagon, and by reason of his carelessness while so engaged. The amended complaint alleged that the accident occurred while the ice was slipping from the wagon. The guardian *ad litem*, who verified the original complaint, was not present at the time the accident occurred, and was not sworn as a witness upon the trial. The original complaint was read to the jury, but the court charged them, in response to a request of the plaintiff, that the fact that the guardian *ad litem*, in the original complaint, stated facts in regard to the way the accident happened differently from the way he stated them in the amended complaint, could not be considered by the jury upon the question as to how the accident happened, or upon the question whether the men were taking off the ice or not. To this charge the defendant excepted, and he now insists upon that exception as well taken. We do not agree with him. The original complaint contained a verified statement of the guardian *ad litem*. It did not contain any statement of the plaintiff herself. It could not be used to contradict the plaintiff's testimony because she had not verified it, and there was nothing to show that she was in any way responsible for it. It

·was not material to contradict the guardian *ad litem* because he was. not sworn as a witness, and there was no pretense that he had any personal knowledge as to how the accident occurred. It was, there-fore, entirely immaterial for any purpose so far as it might affect the evidence given upon the trial. Having been replaced by the amended complaint, it had ceased to be of any effect for any other purpose than as a declaration which might be used to contradict the person who had sworn to it, if the occasion arose. As that occasion did not arise, it was not material, and the charge of the court was. correct.

Upon the whole case we think there was no error in the rulings. of the court, and the case was properly disposed of by the jury upon the evidence.

The judgment and order should be affirmed, with costs.

BARRETT, O'BRIEN and INGRAHAM, JJ., concurred; VAN BRUNT, P. J., dissented.

VAN BRUNT, P. J. (dissenting):

I cannot concur in the conclusion arrived at by the majority of the court in the case at bar. Before the court charged the jury the defendant's counsel requested the court to charge " that if the jury believe from the evidence that the driver, Sweeney, and his helper, McQuade, were unloading ice from the truck opposite the Italian Vitello's basement at the time of the accident, outside of any duty on their part to the defendant, they must find for the defendant." This request was refused.

It is conceded by the prevailing opinion that the defendant was. entitled to have this question submitted to the jury. But it is urged that the refusal of the court to charge as contained in the record was cured by the charge which was subsequently delivered, and that the jury were told that if the accident happened while these men were unloading the ice the defendant was not responsible, the court further saying : " It is true that the reason given by the court was not the one insisted upon by the defendant, but that was a matter of no importance. The material fact was that if the jury found that the accident was caused by unloading the ice that was the end of the liability so far as the defendant was concerned, and if

the defendant had the benefit of that instruction it had no right to complain with regard to the reasons which were given for it."

It seems to me that there are two answers to this proposition : *First*, that the jury might have found the reason given not true in fact, the court basing its instruction to the jury upon the assumed fact that if the drivers were unloading the ice at the time of the accident the plaintiff could not recover, because there was no evidence of any negligent handling at that time.   The evidence in respect to the unloading of the ice showed that if the accident happened in connection with such unloading it was caused by the slipping of the ice from the tongs of one of the workmen, and this, unexplained, showed negligence.   The instruction to the jury, therefore, was upon an assumption as to the condition of the evidence which did not exist; and the jury may very well have come to the conclusion that if there was evidence of such negligence the direction did not apply.   The reason given is only stated parenthetically and qualified the charge.   The defendant was entitled to an absolute, unconditional instruction to the jury upon this point, and not one qualified by a reason which was not justified by the evidence.

And, furthermore, the learned court charged :   " Upon that testimony the jury is to say how the wagon was loaded at the time it went out from the defendant's yard on the morning in question. That seems to be the principal question in the case, the plaintiff's claim being that it went out loaded in a defective way, and without any protection to prevent the top cakes from slipping; the defendant's evidence being that it went out loaded in the proper way so as to prevent those cakes from slipping.   *That question is at the outset of the case, and upon your finding upon that depends your finding the case.*"

The jury were, therefore, instructed by the court that their verdict did not depend upon the question of unloading the ice, but depended entirely upon the question as to whether the load was properly put upon the wagon.

It is true that it is in a subsequent part of the charge that the instruction in regard to unloading is given.   But the charge upon the question as to whether the loading was defective or not, was in no way qualified, and the jury under it were justified in finding the verdict for the plaintiff if they found that the wagon had been

defectively loaded even though the accident had occurred while they were unloading the ice in front of the Italian's store.   It seems to me that by the failure in any way to qualify the previous parts of the charge, and by the giving of an erroneous reason for the subsequent instruction in regard to unloading, it is impossible to say that the jury were not entirely misled, or to determine which instruction the jury followed.

It has been too often held to need the citation of authorities that an instruction given in a subsequent part of the charge does not cure an error committed in a previous instruction.   But it is not necessary to rest upon this rule because at the end of the charge the learned judge reiterates the proposition and says:   " So that the question comes down to a conflict between these witnesses as to how that wagon went out loaded on that morning.   If you believe that the wagon went out as testified to by McQuade and the driver, Sweeney, as they say they loaded it, with these top cakes of ice not protected by the wedge cakes at the back, so that in starting up the wagon the ice was likely to slip off, then the plaintiff has made out the allegations of the complaint, that the ice slipped off and fell from the wagon."

The jury, therefore, went out with the instruction that the sole question upon which they were to pass was as to the loading of the wagon.   These instructions were duly excepted to by the defendant.   I fail to see that these exceptions can be avoided.   The question was clearly presented to the court; the defendant's request was denied, and to its denial an exception was taken, and the instruction was given not once, but twice, that the sole question was as to the loading of the wagon, and this was the last instruction given to the jury.

The judgment should be reversed.

Judgment and order affirmed, with costs.