THRASH, et al. *v.* JACKSON AUTO SALES, INC., et al.

No. 40643          February 24, 1958          100 So. 2d 575

*Crisler, Crisler & Bowling,* Jackson, for appellants.

*Young, Daniel & Coker,* Jackson, for appellees.

Holmes, J.

This suit involves a claim for death benefits under the Mississippi Workmen's Compensation Act. The claim-

ants, who are the appellants here, are Mrs. Maurice B. Thrash, widow of Maurice B. Thrash, deceased, and Mrs. June Thrash Sutton and Elizabeth Thrash, the two daughters of Maurice B. Thrash, deceased.

The deceased was killed in the early morning of March 3, 1955, when the automobile operated by him crashed into an electric power pole at the northeast corner of the intersection of West Capitol and Marion Streets in the City of Jackson. The deceased was pinned beneath his overturned automobile and was apparently killed instantly. At the time of his death, he was in the employment of Jackson Auto Sales, Inc., and had been since about the 21st day of June, 1954. He was employed as an automobile salesman at a salary of $200 per month plus commissions, and for the period from June 21, 1954 to the date of his death on March 3, 1955, his earnings amounted to $4217.32, being an average wage of $115 per week. The defendants, who are the appellees here, are the deceased's employer, Jackson Auto Sales, Inc., and its insurance carrier, Liberty Mutual Insurance Company. After a hearing, the attorney-referee found that the death of the deceased did not arise out of and in the course of his employment and denied the claim. This finding and order of the attorney-referee were affirmed by the full commission and the circuit court, and the claimants appeal.

The sole question argued on this appeal is whether there is substantial evidence to support the finding of the commission that the death of the deceased did not arise out of and in the course of his employment.

The facts determinative of the question here presented are not in material conflict. The deceased at the time of his death was about 52 years of age. He lived with his wife and two daughters at 914 Whitworth Street in the City of Jackson. His daughter Elizabeth was unmarried, and at the time of the deceased's death was approximately 15 years of age. At that time, his other daughter, Mrs.

June Thrash Sutton, was about 19 years of age and had been living with her father for about one year following her separation from her husband. She was not divorced from her husband but was living apart from him, and at the time of her father's death, was employed by R. W. Aiken Insurance Agency. The deceased had been an automobile salesman for approximately nineteen years. He was active in making contacts with prospective purchasers and was more successful than most salesmen. The Jackson Auto Sales, Inc., were dealers for the Oldsmobile. The deceased was furnished an Oldsmobile demonstrator by his employer, and his employer also furnished him ten gallons of gasoline per week. Such additional gasoline as he used and the expense of upkeep were provided by the deceased. The deceased was required to spend four half days per week at the place of business of Jackson Auto Sales, Inc., in his work as a salesman. During the remainder of his time he had no prescribed hours of work, but was more or less on his own in contacting prospective purchasers and in pursuing his work as an automobile salesman. He was permitted to keep the demonstrator in his possession at all times. He frequently went out at night in the prosecution of his work as a salesman and in his efforts to locate prospective buyers. Many of his contacts with prospective purchasers were after five o'clock in the evening.

On the evening of March 2, 1955, he went to his home shortly after seven o'clock. His wife was just starting out to church and she left him seated at the table eating his supper which his daughter June had prepared for him. His daughter Elizabeth was sitting at the table with him. After the deceased had finished his supper, and at about 15 mintues before 8 o'clock, he left his home, telling his daughters that he was going out on West Capitol Street to see a man about selling him a car. Shortly after eight o'clock, he appeared at the DAV Club operated by one Richard Head, and located on Lindberg

Drive just off West Capitol Street and near the overpass on West Capitol Street. He told the operator of the Club that he was there "to meet a man—a prospect—about selling him a car." While there he talked to a negro employee about selling him a car, and to one Jack Hayes about selling him a car, and also to one Doug Knight about selling him a car. Doug Knight had come into the Club shortly after the deceased arrived there. Knight told the deceased that he was not interested in the purchase of an Oldsmobile because he was an employee of the Service Motor Company, which was the Dodge-Plymouth dealer. The deceased insisted that Knight try the Oldsmobile and get in it and drive it. Knight then got in the Oldsmobile with the deceased and drove it to West Capitol Street. He stated that he intended to drive it where he had left his car parked at Leo's Drive-Inn in order to pick up his own car. As they came on West Capitol Street, they saw a car of Elsie and Ann Speakes parked in front of the Willowick Club, and Knight suggested that they stop and go in, saying that he wanted to speak to one of the Speakes girls. This was about ten o'clock in the evening. They spent awhile in the company of the Speakes girls and then the four of them went to the Veterans' Drive-Inn. There they engaged in some drinking and social activities. The evidence is not clear as to whether or not the deceased was intoxicated, or, if so, the extent of his intoxication. The group, however, remained at the Veterans' Drive-Inn until the operator of the club announced that he was ready to close up for the night. The deceased then, according to the testimony of Knight, said it was time to go home, and he got in his car and started east on West Capitol Street in the direction of his home. A witness named Smith testified that he drove out behind the deceased and saw the crash of the deceased's automobile when it struck the electric power pole. The deceased was killed in the crash.

The evidence is in some confusion as to the exact time that the accident occurred. The most definite proof is that the radio log of the Police Department showed that the accident was reported to the Police Department at 2:01 A.M., and that the accident had occurred probably ten or fifteen minutes before this report was made to the Police Department.

It is the contention of the appellants that the uncontradicted proof shows that the deceased left his home on the night of March 2, 1955 to go out on West Capitol Street to see a man about selling him a car, and that the trip out on West Capitol Street was initially a business trip in the course of his employment; that the deceased's later activities in the Willowick Club and the Veterans' Drive-Inn amounted to a personal mission and constituted a temporary deviation from the course of his employment, and that upon the completion of his personal mission he resumed the course of his employment and was on his way home driving the demonstrator car on West Capitol Street when he met his death, and that his death arose out of and in the course of his employment. We think this contention of the appellants is well founded. Mrs. June Thrash Sutton and Elizabeth Thrash testified that on the night in question the deceased left his home about 15 minutes before 8 o'clock for the avowed purpose of going out on West Capitol Street to see a man about selling him a car. He was driving the demonstrator which was furnished him by his employer. The operator of the DAV Club, which is located on Lindberg Drive just off of West Capitol Street near the overhead bridge, testified that the deceased arrived at the DAV Club shortly after eight o'clock, and told him that he was there to meet a man—a prospect—about selling him a car. He tried to effect car sales with several people whom he contacted in the club; namely, Jack Hayes, a negro employee, and Doug Knight. He induced Doug Knight to drive the demonstrator although Knight told

him he was not interested in buying an Oldsmobile because he was an employee of the Dodge-Plymouth dealer. As they drove out on West Capitol Street by the Willowick Club, they saw the car of one of the Speakes girls parked at the club and at Knight's suggestion they stopped and went into the club to see the Speakes girls. Thereafter, at about ten o'clock, the four of them went to the Veterans' Drive-Inn, where they indulged in some drinking and social activities until the club closed. According to the testimony of Knight, the deceased said it was time to go home and he got in his demonstrator and was on his route home on West Capitol Street when he was killed. The foregoing testimony is uncontradicted and clearly establishes the fact that the deceased's trip out on West Capitol Street was initially a business mission, and that he temporarily deviated therefrom during his later activities at the Willowick Club and at the Veterans' Drive-Inn, and then resumed his business route on his way home, and that it was on his way home that he was killed. The attorney-referee and the commission disregarded this uncontradicted testimony and this they were not warranted in doing.

We held in the case of Freeman v. Mississippi Power & Light Co., 92 So. 2d 658, and Retail Credit Company v. Coleman, 86 So. 2d 666, that the commission cannot disregard reasonable and uncontradicted testimony. (Hn 2) It is argued by the appellees, however, that even if it be conceded that the deceased's trip was initially a business trip, he wholly abandoned the business purpose of his trip and never resumed it. We do not think so. It is well settled under the prior decisions of this Court that if a servant while engaged about his master's business deviates therefrom to engage in some personal errand or mission, the master's responsibility may be temporarily suspended but it is re-established when the servant resumes his duty. Barmore v. Vicksburg S. & P. RR. Company, 85 Miss. 426, 38 So. 210, 70 L. R. A. 627; Miss.

Utilities Company v. Smith, 166 Miss. 105, 145 So. 896; Retail Credit Company v. Coleman, 86 So. 2d 666.

■■■ The facts in the case of Retail Credit Company v. Coleman, supra, are strongly analogous to the facts of the case at bar. Coleman was employed by the Retail Credit Company as a field investigator. His duties required him to investigate insurance claims referred to his employer by insurance carriers. He lived and maintained his headquarters at Kosciusko and his territory embraced Kosciusko and Durant. On the day preceding his death he had been investigating a claim in connection with the death of Clinton D. Love and such investigation had taken him to Durant. The proof indicates that he concluded his investigation about five o'clock in the afternoon. The evidence is silent as to his activities between that hour and 9:30 o'clock that night. At 9:30 o'clock, or there about, he went to the 51 Grill in or near Durant and ate a sandwich. He visited at a table with two former college classmates and drank two cans of beer. He remained in the Grill engaged in this social activity until about midnight, when he got in his car and started for his home in Kosciusko, and on the way, his car collided with another car and he was killed. In that case, the Court said:

"While driving on this direct route back to his home his car collided with that of another and he was killed . . . . . In other words, Coleman's personal deviation had been completed and he had resumed his direct business route in the course of his employment. His death on this route was within the statute."

And so in the case at bar, the deceased initially entered upon a business mission in the course of his employment and temporarily deviated therefrom to engage in a personal mission, and upon completion of his personal mission, he resumed his direct business route to his home, and was in the course of his employment when he was killed.

854

There is no substantial evidence to support the finding of the commission to the contrary.

We are accordingly of the opinion that the order of the commission and the judgment of the circuit court affirming the same should be and they are hereby reversed as to the claim of Mrs. Maurice B. Thrash and Elizabeth Thrash, but affirmed as to the claim of Mrs. June Thrash Sutton, since it appears that at the time of the death of the deceased she was over the age of 18 years and was not wholly dependent upon the deceased, and not incapable of self support by reason of mental or physical disability, and is, therefore, not within the terms of the act and is precluded from the allowance of any benefits thereunder.

The cause is therefore reversed in part and affirmed in part and remanded to the commission for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part and remanded to Commission.

*McGehee, C. J.,* and *Hall, Kyle,* and *Ethridge, JJ.,* concur.