MISSISSIPPI UTILITIES CO. *v.* SMITH.

(Division B.  Feb. 13, 1933.)

[145 So. 896.  No. 30418.]

Green, Green & Jackson, of Jackson, for appellant.

Wilbourn, Miller & Wilbourn, of Meridian, for appellant.

H. J. Patterson and **E. B. Patterson,** both of Monticello, and **Hall & Hall,** of Columbia, for appellee.

Argued orally by **Forrest B. Jackson,** for appellant, and by **Lee D. Hall,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellee, I. H. Smith, sued the appellant, Mississippi Utilities Company, for a personal injury sustained by the appellee while employed by the appellant, alleging that, on the 21st of June, 1928, the appellant owned and operated an ice plant engaged in the manufacture of ice, and that the appellee was employed by the appellant and required to do such work as might be assigned

to him by the appellant's manager, the appellee's superior officer.

It was further alleged that, in connection with the operation of the ice plant, the appellant used a Ford automobile truck in its business, and that on the occasion of the injury the appellee was directed to take this truck and carry material to a certain place and assist another to do work there which appellant's manager had ordered to be done; that the automobile truck was out of repair, and had to be cranked by hand; that the insulating wires had rotted and worn away; and that when the appellee, who was required to operate the truck on the occasion in question, went to crank the truck to return to the company's place of business, it back-fired and broke his arm. It was alleged that prior to this time the manager of the appellant, J. W. Tynes, had been informed of the unsafe and dangerous condition of the Ford truck, and its tendency to back-fire when being cranked, and had agreed to have it repaired, and that the appellee relied upon this agreement and promise, and, on the occasion in question, supposed that the master (Tynes) had repaired the truck so as to make it safe.

It was shown that another employee of the appellant was engaged for the special purpose of keeping the truck and other machinery belonging to the appellant in proper condition, and to do such other work as the appellant's manager might require of him.

It was alleged that it was the duty of the master to keep in safe condition the machinery used in the appellant's business for the safety of the employees.

The defendant (appellant) filed a plea of general issue, giving notice thereunder that it would prove that plaintiff (Smith) was not an employee of the appellant, and was not engaged in the scope of his employment in the furtherance of any business for the appellant, but that the appellee was engaged in a matter in and about the business of another; that J. W. Tynes, the manager of

the utilities company, did not, on behalf of the company, request the appellee to perform any undertakings for the company out of which there was any injury to the appellee. It was further set out that the company did not direct or request the appellee to crank the Ford truck, but that the appellee was engaged in the furtherance of business for himself, or a third person at the time, and that the utilities company had no direction or control over the Ford truck, or over the actions of the appellee. The notice of special matter further alleged that the truck was in a reasonably safe condition for a Model T truck; had been purchased from a reputable dealer and was kept in a reasonably safe condition, such as required of a reasonably prudent person. That, at the time of the accident, the truck was being used by the appellee without permission, and on a mission wholly disconnected from any usage for the appellant; that the appellee caused his own injury, was guilty of contributory negligence, voluntarily assumed the risk, and the injury was the result of a simple accident. That the injury was caused by the negligence of a fellow servant for which the appellant was not liable.

There is conflict in the evidence as to whether the appellee was in the employ of the appellant. There is also a conflict as to the ownership of the Model T Ford truck.

It appears from the appellee's proof that the Mississippi Utilities Company had acquired the ice plant and gin involved in the controversy, and that it paid the appellee and the other employees during the month of June, and for services on the day of the injury; that the truck in question, after the injury, was found to be in a bad condition, with the insulation over the wires rotted off, which caused a short circuit, and which, in turn, caused premature ignition resulting in back-firing when it was being cranked; that appellant's manager had been notified of this dangerous condition several days before the injury, and had promised to remedy it, but

had not done so, and the appellee did not know, at the time he was injured, that the truck had not been repaired; and that he had relied upon Tynes' promise to have it repaired.

The truck was afterwards repaired by another employee of the appellant specially employed for the purpose of keeping the machinery repaired, and this employee sustained the appellee both as to the condition of the truck and as to the notice to Tynes, and his promise to have it repaired.

It appears that Tynes, appellant's manager, had directed the appellee to take the truck and carry some material to a certain place, a house in Monticello, and assist a named person in some work to be done there in repairing this house, which the appellee did; that when the work was finished, he was attempting to crank the truck and was injured.

Tynes testified that at the time of the injury the Mississippi Utilities Company had not acquired the ice plant and gin, but that it has a contract, which Tynes termed an option, by which they could acquire it, which was exercised after the accident, and that from the first of June, under this contract, they received the income and profits from the ice and gin plant, and that they paid the expenses of its operation from that date. The terms of the contract do not appear, as no copy of it was introduced in evidence, nor did the proof show any of its specific terms. Tynes also testified that the house, to which the appellee was sent by him to assist in repairing, belonged to Mrs. Tynes, his wife; that he personally owned the truck at the time of the injury, and operated the ice and gin plant, which was afterwards transferred to the utilities company; and that he was not, at that time, acting as manager for the appellant. He denied the appellee's statement that he (Tynes) had been informed as to the dangerous condition of the truck, and had promised to have it repaired.

It appears that there were two trucks used in connection with the ice and gin plant acquired by the utilities company. Tynes claimed that he personally owned one which was not transferred or sold to the appellant.

Tynes was introduced by the appellee as an adverse witness, and was examined as an adverse witness as on cross-examination, which was objected to by the appellant. This is assigned as one of the errors on appeal.

It appears that when the trial began, the attorneys for the appellant requested that Tynes be allowed to remain in court for the purpose of advising them during the progress of the trial, which the court permitted. When he was called as an adverse witness and the objection was made, this fact was referred to before the court, and the appellant's attorneys stated that they were willing for the record to show that as being a fact. Tynes was not a party to the suit. It appears, however, from his evidence, that it was highly favorable to the appellant, and that he was, at all times, on the alert to protect the appellant's interests.

Even if we concede that it was error to permit Tynes to be examined as an adverse witness, it would not constitute reversible error in this case. Before a judgment can be reversed for error, it must appear that the error was prejudicial and harmful to the complaining party. It does not so appear in this case.

Matters, such as the introduction of proof, the asking of leading questions, etc., are largely within the discretion of the trial court. There was no attempt to impeach the witness Tynes, in this case, as being unworthy of belief, and we are not willing to reverse the case for this alleged error.

It is not necessary now to decide whether, under any circumstances, the court can permit a party, who is not a party to the suit, and has no personal interest in the controversy, to be called as an adverse witness and so examined.

We think it was a question for the jury to decide, on the proof, whether the appellee was employed by the utilities company, and whether or not the truck was in an unsafe and dangerous condition, and whether the company had been informed thereof prior to the accident, and had promised to remedy the situation.

We think it was also for the jury to decide whether the utilities company was the owner of the ice and gin plant, and whether or not the appellee was paid by them.

Upon all of these matters the evidence is conflicting, and, of course, the jury is the trier of the facts.

We do not think it necessary to decide whether the fact, if it be a fact, that Tynes sent the appellee to a house owned by his (Tynes') wife, belonging to her personally, to repair same without knowledge on his part of such fact, would be a bar to recovery in this case if the injury resulted from such work.

Conceding, for the purpose of this opinion, that the appellee had been sent by Tynes, and that he was assisting in the repair of a house belonging to Tynes' wife, in which the appellant, the ice and gin company, had no concern, it does not affect the liability here, for the reason that the mission had been completed, and so far as private work for Mrs. Tynes was concerned, the appellee had started to return to the place of his employment, having in charge the truck found by the jury to belong to the utilities company, and which it was necessary for him to use in returning to his place of employment. At that time, we think he was in the employment of the appellant. The instrumentality of the appellant was being used in the transportation of its employee, and it was necessary for him to return this instrumentality to its master, and he was engaged in that particular duty at the time of his injury.

In Barmore v. Vicksburg, S. & P. R. Co., 85 Miss. 426, 38 So. 210, 212, 70 L. R. A. 627, 3 Ann. Cas. 594, the court dealt with a similar condition, and in the course of the

opinion the court said: "In determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he at the time doing any act in furtherance of his master's business? If a servant, having completed his duty to his master, then proceeds to prosecute some private purpose of his own, the master is not liable; but if the servant, while engaged about his master's business, merely deviates from the direct line of duty to accomplish some personal end, the master's responsibility may be suspended, but it is reestablished when the servant resumes his duty. Even if in violation of express orders, a deviation from, is not an abandonment of, the master's service. Mulvehill v., Bates, 31 Minn. 366, 17 N. W. 959, 47 Am. Rep. 796; Rahn v. Singer Mfg. Co. (C. C.), 26 F. 912; Weber v. Lockman, 66 Neb. 469, 92 N. W. 591, 60 L. R. A. 313; Sleath v. Wilson, 9 Car. & Payne, 607; Ritchie v. Waller [63 Conn. 155, 28 A. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361], supra; Williams v. Koehler, 41 App. Div. 426. 58 N. Y. S. 863; Quinn v. Power, 87 N. Y. 535, 41 Am. Rep. 392. If the act which the servant was engaged in at the time of the injury was one which, if continued until its completion, would have furthered the master's business. and been within the scope of the servant's employment, the master would be liable, even though the act occurred at a place to which his duty did not necessarily call him. Geraty v. Nat. Ice Co., 16 App. Div. 174, 44 N. Y. S. 659. This class of cases is plainly distinguishable from those in which there has been a departure—a turning aside—from the master's business to engage in an affair not incidental to his service, but purely of the servant's own. The principle of law governing each class is well understood, the main difficulty being the classification of the particular case."

We think, therefore, that if the truck belonged to the

utilities company, as the jury found it did, and if the allegations and proof showed that it was in a dangerous and unsafe condition, known to the master, as was found by the jury's verdict, then the master was liable.

It is urged here that if the automobile truck, in a bad condition, as stated, was voluntarily operated by the appellee, he assumed the risk of his employment.

If the testimony of the appellee is true, there could be no assumption of risk by him, because of the knowledge of the master of such, defective condition; his promise to have it repaired; and the appellee's reliance upon that promise.

It is provided by statute in this state that a servant does not assume the risk of his employment, where the master is negligent. Section 513, Code 1930, reads, in part, as follows: "In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master. . . ."

An automobile is not such a simple piece of machinery as to free a master from liability, but is a machine which the master must keep in a reasonable condition of safety. This duty is nondelegable. Planters' Oil Mill v. Wiley, 154 Miss. 113, 122 So. 365, in the second syllabus of which it is said that: "It is master's nondelegable duty to provide employees working around machinery with safe place or instrumentality. . . . This is a nondelegable duty, and a master is guilty of negligence, where an employee engaged for that purpose . . . . was negligent."

In Hercules Powder Co. v. Tyrone, 155 Miss. 75, 124 So. 74, 475, we held that: "Where machine is complicated, mere fact that servant may happen to know as much as master does about instrumentality does not relieve master from furnishing servant with safe instru-

mentality." We also held that it "is nondelegable duty of master as to complicated machinery to furnish servant with safe machinery and appliances with which to do his work, and to keep machinery and appliances in reasonably safe condition."

The refusal of several instructions is complained of, some of which sought to instruct the jury peremptorily that the appellee was guilty of contributory negligence, and it was their duty to diminish the damages proportionately. The peremptory part was, of course, improper on the proof. The appellant was granted an instruction which told the jury that if appellee was negligent, he could not recover, or if the defective condition of the truck was not the sole and proximate cause of his injury, he could not recover; also, an instruction to diminish the damages if the appellee was negligent; also, that the master is not liable for the negligent acts of a fellow servant, even though such negligence produced injury to another servant.

These instructions were more favorable to the appellant than it was entitled to receive, and proceeded upon the theory that if the injury was due to the negligence of the employee, the master was not liable.

The appellant was granted another instruction to the effect that if the jury believed from the evidence that it was the duty of Smith, the appellee, or any fellow servant of the utilities company, to repair and keep in safe condition the truck, and Smith, or any fellow servant, failed to perform this duty, Smith was not entitled to a verdict, but the jury should return a verdict for the appellant.

Of course, if it was the duty of Smith, appellee, to keep the truck in repair, if he had been employed for that purpose, and neglected to perform his duties in that regard, he could not recover for an injury, because a party cannot recover for his own wrong. However, there is no proof from which it could be inferred that Smith,

the appellee, was under any duty to repair the automobile truck. On the contrary, the proof shows that another person was employed for that particular purpose, and such employee, when acting in that capacity, was discharging a duty for which the master was bound. In other words, such employee was discharging a nondelegable duty, and was not a fellow servant within the legal meaning of that term.

The appellant was granted another instruction more liberal than it was entitled to, which, in effect, told the jury that the plaintiff, in accepting the employment, assumed all the ordinary risks of the work, and that these risks were known to Smith.

Taking the instructions as a whole, as we must do, we find that the appellant secured a fair announcement of the law, and as stated, in certain respects, more favorable than it was entitled to receive. None of the refused instructions would constitute reversible error in this case. Most of them state the law inaccurately. In other words, elements are integrated into them more favorable than the law permits, and, therefore, it was no error to refuse them.

We find no reversible error, and the judgment is affirmed.

Affirmed.