SUMMERVILLE v. STATE.

In Banc. June 13, 1949.

No. 37215. (41 So. (2d) 377)

Bell & McBee, for appellant.

**George H. Ethridge,** Assistant Attorney General, for appellee.

**Roberds, J.**

Appellant was indicted for statutory rape of Miss Hazel Carpenter, an unmarried female, younger than appellant, and over twelve and under eighteen years of age. Section 2359, Code 1942. The jury convicted and sentenced him to two years in the State penitentiary.

When the State rested its case, defendant moved the court to exclude the evidence and direct the jury to acquit him. The motion was overruled. That action is now assigned and argued as error. The motion was based upon three grounds—first, that no evidence corroborating the prosecutrix had been introduced; second, that the State had failed to prove that the victim was younger than defendant; and, third, the evidence was insufficient to support a conviction.

The motion had no merit on the stated grounds. There was ample evidence in support of the testimony of Miss Carpenter, her age and that of defendant had been shown, and appellant himself had confessed he committed the necessary acts to make out the crime, which confession, as will be shown hereinafter, was properly admitted in evidence.

But on this appeal, in connection with this assignment of error, ▮▮ it is also argued that at the stage of the trial when this motion was made, the State had not shown

Miss Carpenter to be an unmarried person. It will be noted the motion does not expressly mention that ground. However, after the State and defendant had rested their cases, the court, on motion of the district attorney, permitted the case to be reopened, and the State to prove that fact. Appellant urges that action as reversible error. It is clear this was a mere oversight. No effort to controvert the fact, either by cross-examination of Miss Carpenter, or offer to introduce other witnesses on the question, was made by defendant. Permission to so controvert would no doubt have been given had the offer been made. No surprise is here involved. Appellant knew in advance this was an element of the crime necessary to be shown by the State, and could have been prepared had he wished to offer proof on that question. Such matters are largely within the discretion of the trial judge. Lee. v. State, Miss., 29 So. (2d) 211. There was no abuse of the discretion here.

 The court permitted the district attorney to ask Miss Carpenter leading questions directed to the details of the sexual act. This is urged as reversible error. That was done because the trial judge observed that Miss Carpenter was hesitant and much embarrassed to give such details in the presence of the officers, jurors and the spectators in the courtroom. It was, of course, necessary that the State show intercourse was actually committed. The trial judge made this statement descriptive of the existing conditions: ''The court holds this: that this being a sixteen year old girl and naturally reluctant under the circumstances to testify, that the district attorney may ask reasonably leading questions to get at whatever may or may not be the facts of the case.'' Counsel for defendant stated ''We interpose an objection to that for the sake of the record.'' The court then responded: ''Let the record show that the defendant objects to this and that the objection is by the court overruled for the reason that leading questions are reasonably within the discretion of the presiding judge, and this court has sat here and list-

ened to this witness and observed her demeanor on the witness stand and now holds that leading questions are reasonably necessary at this stage of the testimony.'' The district attorney then proceeded to inquire as to facts constituting essential elements of the crime, such as penetration of sexual organ of the female by such organ of the male, some of the questions being leading and some not, to which questions hesitant, but apparently frank and truthful, answers were made by the witness.

Counsel for appellant cite Turney v. State, 8 Smedes & M. 104, 47 Am. Dec. 74, and argue that the circumstances in this case do not bring it within the rules announced in the Turner case permitting leading questions. There were three opinions in the Turner case. All discussed this question. We do not understand that the opinion of any judge undertook to set out all the circumstances under which leading questions might be asked. The opinions do announce the rules (1) that in some jurisdictions the discretion of the trial judge in permitting such questions is not reviewable by the appellate court, (2) that in most jurisdictions, including our own, such action is reviewable, but that (3) no reversal will result unless the discretion was manifestly abused and defendant was deprived of a fair trial. One opinion made the observation ''Clearly an appellate court will not reverse a case on the ground of the asking of leading questions, when the legal discretion vested in the trial judge in this regard was not abused,'' and, further, ''This is a matter which cannot, in many cases, be made to appear in an appellate court,'' and that each case must depend upon its own peculiar circumstances.

The discretion of the trial judge and the effect of its exercise are discussed in 58 Am. Jur., pages 318 and 319, Sections 570 and 571, and the Turner case is there cited. The statement is there made ''To justify a reversal because of the allowance of a leading question, not only is it necessary that there should have been a manifest abuse of discretion, but it is also necessary that the question

shall have influenced the answer and that injury resulted.'' Finally, as to the rule, this Court said in Miss. Utilities Co. v. Smith, 166 Miss. 105, 145 So. 896, 898, ''Matters such as the introduction of proof, the asking of leading questions, etc., are largely within the discretion of the trial court.''

It is of the greatest importance, in legal proceedings, that the truth be ascertained, yet, at the same time, that the fundamental rights of litigants be protected. Can we say the court abused its discretion under the circumstances of this case? We do not think so. In the first place, the trial court was in much better position to judge the necessity and propriety of his action than is this Court. He saw the witness and observed the delicacy of the situation. He noted her sensibility to going forward and explaining in detail the intimate acts necessary for the State to prove to make out its case. One girl of sixteen years might be much more humiliated to give the necessary intimate details essential to the crime here charged than another of the same age. Each case must depend upon its own circumstances, and the trial judge is the person best situated to decide upon the course of conduct necessary to elicit the truth and yet safeguard the rights of the accused, and unless this Court can say, from the whole record, he abused his discretion and the accused was deprived of a fair and impartial trial, we should not reverse a case because of such action. And, looking to the entire record in this case, as we weigh the question whether the accused was deprived of any fundamental legal right by this action of the court, it is noted that the appellant himself admitted, in substance, to the county officials his commission of the intimate, essential acts to which Miss Carpenter testified in response to the question of the district attorney, and he offered no evidence whatever to deny, or contradict, the facts or the confession. No error was committed in this regard by the trial court.

According to the proof of the state appellant made two incriminating statements to the sheriff and deputy sheriff of Montgomery County. Appellant urges that these statements were not admissible in evidence, first, because it is not shown they were free and voluntary and, second, because the trial court would not permit the defendant to take the stand and deny he made them.

We now decide whether the admissions were free and voluntary. The first statement was made at Herring Motor Company Service Station in Winona about three o'clock in the morning of the night the crime was committed. As a preliminary to an understanding of this statement it is necessary to say that the rape took place some five or six miles west of Winona. The proof discloses that appellant had commanded James Henderson, the escort of Miss Carpenter, and Horace Lott, associate of appellant, on this night, to get out of the automobile in which the four were riding and which was being driven by appellant, but which belonged to Henderson. Henderson and Lott obeyed and got out. He made Miss Carpenter remain in the car. He then drove some two miles, stopped and accomplished his purpose over the resistance of Miss Carpenter. He returned and picked up Henderson and Lott. Henderson, under the pretense the car was about out of gas, suggested they drive to Winona to get gasoline. That was done. They stopped at Herring's Service Station. While gas was being put in the car Henderson succeeded in removing the switch key from the car and he and Miss Carpenter jumped out and ran to and entered a near-by automobile which had just driven up. After a struggle, in which appellant undertook, but failed, to drag Henderson from that car, it drove to the Texaco Station in Winona, from which Henderson called the sheriff by telephone. The sheriff, Dewitt Tyler, and his deputy, Lawrence King, immediately came to the station from which Henderson had called. Miss Carpenter informed the sheriff what had happened, in which she was supported by Henderson so far as he

know the facts. The sheriff and his deputy went to Herring's station, at which place appellant and his friend Lott were left when Henderson and Miss Carpenter got into the stranger's automobile. The officers did not then find appellant and Lott. They had disappeared into the open territory to the rear of the gas station. However, in a short time they showed up at the station. Here appellant stated to the sheriff that he, upon stopping the automobile some two miles from where he had put Henderson and Lott out, commanded Miss Carpenter to remove all of her clothing and get onto the back seat of the car, which she did; that he then attempted to have sexual relations with her, and that she picked up from the front seat of the car a flashlight and struck him with it; but that, in spite of this resistance, he succeeded in accomplishing his purpose after considerable difficulty, due, as he thought, to the fact that she had never indulged such relation before. Objection was made to this statement, or admission, of appellant on the ground it was not shown to be free and voluntary. On that question the sheriff testified that when appellant finally again appeared at Herring's station he, the sheriff, carried appellant some fifteen steps to one side to talk with him; that when they stopped appellant reached to his pocket as though to draw a weapon, and the sheriff, apprehending he might do that, slapped him on the face with his open hand, and admonished him against such an attempt. He told appellant why he had slapped him and told him not to repeat the effort, else he would slap him again. He did this, the sheriff said, as a normal precaution for his own protection, and he explained to appellant it would not be done again unless appellant made another such attempt. The sheriff was careful to tell appellant that appellant's conduct, in the respect mentioned, was the sole and only reason he was slapped. He said this act had nothing to do with a confession or admission on the part of appellant. It might be added here the sheriff then searched appellant and did not find him with a

pistol, or other weapon, at that time, although the proof of the state shows that previously, on more than one occasion in the course of the happenings of that night, appellant had said to Miss Carpenter and Henderson that he did have a pistol, and he told Miss Carpenter, when she tried to resist his demands, that he had killed a number of pretty girls who had refused to yield to his commands. Proceeding with the confession after the slapping incident, the sheriff testified ''Then he calmed down and I began to ask him about his story on just what had happened prior to that.'' The sheriff said he made no suggestion, or intimation, of reward, or punishment, immunity or inducement, to appellant to make a statement; that appellant talked freely and willingly of his own accord about the events, and so made the statements as set out above.

Mr. King, the deputy sheriff, heard all, or a part, of the conversation between appellant and the sheriff. He said ''the sheriff talked to Mr. Summerville and he first denied this—what happened—and a little later he said yes, he did do it. Q. Did do what? A. Said he completed his job, said he went ahead with the girl and did just what he went out to do when he carried her off.'' He further described his completed act by another word we will not quote. Appellant also told, as King testified, of his putting Henderson and Lott out, and his driving Miss Carpenter some distance away, of his demands upon her, and that she struck him with the flashlight, and of his accomplishment of his intentions over her resistance. Mr. King said all of this was free and voluntary; that no suggestion of punishment, reward, or inducement of any kind was held out to appellant. There was no testimony contradicting the circumstances under which these statements were made as given by the sheriff and the deputy. The trial court held the admission competent. Can we say he was clearly, or manifestly, wrong in so doing? We see no ground upon which we can do that.

■■ Appellant made another statement in the nature of a confession. That was the next day while he was in jail. The sheriff, since his conversation with appellant at Herrings and after placing appellant in jail, had made an investigation, following the course of travel of these four parties the night before. Miss Carpenter had reported that appellant had taken twenty-five dollars from her. The sheriff, thinking appellant might have hidden the money back of Herrings' Station, asked him about it, and appellant replied "No, sir, I didn't rob her but I did have sexual intercourse with her." The sheriff testified "He volunteered that." Mr. King, the deputy, was also present. There is no suggestion in this record that any threat or advantage of any kind was intimated to induce the foregoing statement. Furthermore, the record does not disclose any objection was made thereto. Of course, under these circumstances, it cannot be said the admission should have been excluded because not made freely. It might be added, that the court, in clear and specific language, instructed the jury to entirely disregard and not consider any statements by any one as to whether appellant took the money from Miss Carpenter. No point is made on that. Therefore, we hold that the contention that the foregoing admissions were not free and voluntary is not well taken.

The further contention is made, as to these confessions, that appellant desired to take the witness stand and deny one, or both, of them, in the absence of the jury and preliminary to their admission before the jury, but the court would not permit him to do so except upon the condition (1) the district attorney could examine him upon the entire facts and circumstances of the merits of the case, and (2) thereafter prove before the jury what he might say in that regard. Of course, if in fact, the trial judge had imposed such a condition, that would have been reversible error. ■■ The competency of a confession should be ascertained preliminary to its introduction before the jury, and an accused has the right to

take the witness stand during such preliminary hearing and limit his testimony to facts bearing upon whether the confession was free and voluntary, and his testimony is entitled to be considered and weighed, along with the other evidence, by the trial judge upon the fact whether accused made the confession freely and without hope of reward or fear of punishment. Defendant further has the constitutional right not to take the stand and testify. However, the record does not disclose the trial judge imposed any such condition upon the right of appellant to testify on the preliminary hearing. After some sparring between counsel for appellant and the district attorney, and a statement into the record by the court, in which he said ''I will now limit the examination at this time, by way of expediting the matter, to purely the voluntary character of the confession,'' and counsel for appellant had said he was not then able to say whether defendant would or would not take the stand to testify on the merits, the trial judge finally remarked ''The court now asks the defendant, or rather his counsel, to state whether or not he desires to take the stand at this stage of the proceedings (the jury being out) merely to contest the freedom of the confession,'' to which counsel for appellant replied ''No, the defendant does not desire to take the stand.'' It is thus seen that, regardless what the idea of the trial judge might have been when these colloquies began, he finally informed appellant that he could take the stand ''at this stage of the proceedings merely to contest the freedom of the confessions,'' and appellant declined to do that. We do not understand this right was based upon the condition that defendant was required to testify before the jury on the merits.

Affirmed.