738 So.2d 242 (1998)
Quincy SMOTHERS a/k/a Quincy Washington, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01113-COA.
Court of Appeals of Mississippi.
March 9, 1998.
Rehearing Denied May 4, 1999.
Certiorari Denied July 1, 1999.
*243 George T. Holmes, Jackson, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris, Jr., Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
LEE, J., for the Court:
¶ 1. Quincy Smothers was convicted on two counts for selling crack cocaine to an undercover detective with the Jackson Police Department. The indictment originally charged three counts of sale of crack cocaine; however, a mistrial was declared as to Count One. From these convictions, he perfects his appeal to this Court and argues that the trial court erred, as follows: (1) receiving an unfair trial due to the court allowing leading of State's witnesses and by presenting cumulative evidence which bolstered the State's testimony, (2) limiting his right to cross-examination and confrontation of a State's witness, and (3) denying Smothers an entrapment jury instruction. Finding his arguments without merit, we affirm.

FACTS
¶ 2. Prior to February 27, 1996, the Jackson Police Department and Drug Enforcement Administration had been working on a sting operation investigating nineteen individuals suspected of narcotics trafficking. One of the individuals suspected of said trafficking was the appellant, Quincy Smothers. On February 27, 1996, Officer Mike Russell, detective with the Jackson Police Department, and agents with the Drug Enforcement Administration (DEA) arranged for a confidential informant to contact Quincy Smothers a gentlemen suspected by the police and DEA of selling crack cocaine. On February 27, 1996, Officer Mike Russell, DEA agents and their confidential informant gathered to commence the undercover investigation. The confidential informant made a telephone call to an individual known as Smothers. The confidential informant identified herself to Smothers and implied she was interested in purchasing drugs from Smothers. At trial, testimony reflected that Smothers immediately admonished the informant for mentioning the purchase over the telephone, but agreed to a time and place which the confidential informant could meet him to make the purchase. It was at this point that the confidential informant and Officer Russell finished preparations for the meeting with Smothers to purchase the drugs.
¶ 3. On this first occasion, Officer Russell did not witness the actual drug transaction between the confidential informant and Smothers due to the fact he had been requested by Smothers and a second individual to go and wait for the informant in the vehicle. The confidential informant returned to the vehicle and delivered the *244 crack cocaine to Officer Russell. This initial contact between the confidential informant, Officer Russell, and Smothers allowed the opportunity for two additional purchases of cocaine from Smothers by Officer Russell.
¶ 4. On March 6, 1996, Officer Russell, DEA agents, and the confidential informant again gathered to arrange a meeting with Smothers. As is standard practice, before the informant was allowed to meet with Smothers she was searched by a female law enforcement officer to make sure no narcotics were currently in her possession. Additionally, Officer Russell was given a wire with the appearance of being a pager, and he placed this wire on his person. The confidential informant arranged for her and Officer Russell to meet with Smothers at the Grove apartments.
¶ 5. The confidential informant introduced Officer Russell to Smothers as a construction worker. Officer Russell explained that he needed the cocaine to pay his employees. Officer Russell explained that he would pay his employees in cash and the remainder in cocaine. Smothers was still suspicious of Officer Russell. Smothers's suspicions are described in the trial testimony of Officer Russell. At trial, Officer Russell stated that Smothers continued to ask questions of him and further inquired as to whether he was a police officer. Additionally, Smothers asked if the pager Officer Russell was wearing was a wire. Officer Russell answered in the negative to both of the questions posed to him by Smothers. Smothers was still wary of the presence of the pager Officer Russell was wearing and had him remove the pager and place it in the vehicle he and the confidential informant had arrived in. On this occasion, Officer Russell personally purchased $500 worth of crack cocaine from Smothers. Additionally, Officer Russell received a pager number for Smothers and was told when he communicated with Smothers to refer to him as "John."
¶ 6. On the third occasion, Officer Russell arranged to meet with Smothers without the presence of the confidential informant. Officer Russell talked with Smothers on the telephone and arranged to meet Smothers in a parking lot. Once Smothers arrived at the parking lot, he instructed Officer Russell to follow him because there was too much activity. Officer Russell obliged Smothers's request and followed him to the parking lot of an apartment complex. It was in this parking lot that Officer Russell personally made the third and final purchase of cocaine from Smothers for the sum of $600.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN ITS RULINGS ON SMOTHERS'S OBJECTIONS TO QUESTIONS AS BEING LEADING AND CUMULATIVE AND THEREFORE, RENDERING HIS TRIAL UNFAIR.
¶ 7. The first assignment of error was that the trial court allowed leading questions and cumulative testimony which prejudiced Smothers and rendered his trial unfair. During the trial of this matter, the State placed an undercover agent, Officer Mike Russell, on the stand to testify as to the facts pertaining to the undercover investigation conducted by the Jackson Police Department and the Drug Enforcement Administration relative to Smothers selling crack cocaine. While Officer Mike Russell was on the stand, Smothers alleged that the trial court improperly allowed the State to make out its case against him with leading questions and bolstered testimony.
¶ 8. The standard applied to determine whether an injury has resulted to the complaining party due to the use of leading questions and which requires us to reverse a decision of the trial court is two-pronged. The law of Mississippi requires the following to reverse a case based on the use of leading questions when examining a witness's testimony: (1) there was a manifest abuse of discretion by the trial *245 court and (2) the question shall have influenced the answer and injury resulted. Summerville v. State, 207 Miss. 54, 41 So.2d 377, 379-80 (1949) (quoting 58 Am. Jur. Witnesses §§ 570 and 571). This standard is applied because the harm caused is usually inconsiderable and speculative, and only the trial court is able to observe the demeanor of the witness to determine the harm. Whitlock v. State, 419 So.2d 200, 203 (Miss.1982). As a result, "matters, such as the introduction of proof, the asking of leading questions, etc., are largely within the discretion of the trial court." Summerville v. State, 207 Miss. 54, 41 So.2d 377, 380 (1949) (quoting Mississippi Utilities Co. v. Smith, 166 Miss. 105, 145 So. 896, 898 (1933)). Each case must depend upon its own circumstances, and the trial judge is the person best situated to decide upon the necessary course of conduct necessary to elicit the truth and yet safeguard the rights of the accused, and unless this Court can say, from the whole record, he abused his discretion and the accused was deprived a fair trial, we should not reverse a case because of such action. Summerville, 41 So.2d at 380. The record reflects that leading questions were used by the State in examining Officer Russell. The following is the testimony objected to by the defense.
QUESTION: Let me ask you this question: Did [the informant] set up a phone conversation between herself and a person that identified himself as Quincy Smothers?
BY MR. HOLLOMON: We object to leading.
BY THE COURT: I will let him answer the questions.
QUESTION: And it was indicated that a purchase of crack cocaine was desired; is that correct?
BY MR. HOLLOMON: If the Court please, we object to leading.
BY THE COURT: Don't lead the witness.
BY MR. DAVIDSON: Yes, sir.
QUESTION: Can you tell me whether or not that is correct?
¶ 9. The prosecution then moves into the second transaction, where Officer Russell identified Smothers as exiting a Lexus automobile, the prosecutor again has Officer Russell repeat his testimony. The following is the testimony objected to by the defense.
QUESTION: When you went to the subsequent location did you observe who got out of this Lexus.
BY MIKE RUSSELL: Yes, sir.
BY MR. HOLLOMON: If the Court please, we object to this. He's been over it. It's been asked and answered.
BY MR. DAVIDSON: I'm almost through.
BY THE COURT: All right.
Later in discussing the need to use drug users as confidential informants, the prosecutor asked:
BY MR. DAVIDSON: Is that what you would expect to be friends with this defendant?
BY MIKE RUSSELL: Yes, sir, I would.
BY MR. DAVIDSON: Those are the types of people that he associates with, is that correct?
BY MR. HOLLOMON: Objection to leading.
BY THE COURT: Overruled.
BY MR. DAVIDSON: All right. Well, you actually engaged in the hand-to-hand transactions with this defendant on two occasions; it that correct?
BY MIKE RUSSELL: That's correct.
BY MR. HOLLOMON: Objection to the continuous leading, Your Honor.
BY THE COURT: Try not to lead the witness.
BY MR. DAVIDSON: Can you tell me whether or not you actually engaged in the actual transaction between yourself and this defendant?

*246 BY MR. HOLLOMON: We object. It is improper redirect. He's been over that.
BY THE COURT: Overruled.
BY MR. DAVIDSON: Did [the informant] have anything whatsoever to do with the transaction other than being there?
BY MR. HOLLOMON: Object to leading, improper redirect.
BY THE COURT: Overruled.
BY MR. DAVIDSON: Can you tell me whether or not after a short period of time this confidential informant, ..., came back with cocaine in her hand?
BY MR. HOLLOMON: Object to leading, Your Honor.
BY THE COURT: Overruled.
BY MR. DAVIDSON: Well, in the subsequent two cases, the two cases that she wasn't involved, she never touched the cocaine, did she?
BY MR. HOLLOMON: If the Court please, objection to the continuous leading, Your Honor.
BY THE COURT: Overruled.
BY MR. DAVIDSON: Can you tell me whether or not she actually touched the cocaine?
BY MIKE RUSSELL: No, sir, she did not.
BY MR. DAVIDSON: In fact, she wasn't even with you on the third occasion correct?
BY MR. HOLLOMON: We object to leading.
BY THE COURT: Overruled.
BY MIKE RUSSELL: No, sir, she was not with me.
BY MR. DAVIDSON: So the fact that she was searched or she wasn't searched isn't relevant to anything, is it?
BY MR. HOLLOMON: If the Court please, object to leading.
BY THE COURT: Sustain objection to the form of the question.
¶ 10. As aforementioned, under the two-pronged standard the trial court is allowed great discretion in allowing leading testimony if the questions do not prejudice the complaining party and render the trial unfair. Prior to the leading questions, which the appellant complains injured his ability to receive a fair trial, the State had asked Officer Russell nonleading questions which presented substantial evidence upon which Smothers could be convicted. During the course of the prosecution's questioning Officer Russell through the use of nonleading questions, he identified the name of the confidential informant, the informant's purpose in the undercover investigation, and identified Smothers, the appellant, as the individual whom he had personally purchased crack cocaine from on two separate occasions. The aforementioned testimony was submitted to the jury without objection from the appellant. Additionally, the State introduced taped conversations pertaining to the drug transactions between the confidential informant, as well as, Officer Russell and the voice of an individual which Officer Russell identified at trial as Smothers. The aforementioned information, in and of itself, is enough for the jury to consider and make a determination as to the guilt or innocence of Smothers.
¶ 11. Smothers also argues that the trial court prejudiced his case by allowing the prosecutor to use repetitious questions in examining Officer Russell. "The mode of examination of a witness allowed by the trial court will not be criticized or reviewed unless gross injustice resulted therefrom." Shows v. State, 267 So.2d 811, 812 (Miss. 1972). Upon reviewing the record, the repetition of Officer Russell's testimony was for clarification of the facts and did not bolster his own testimony, as to result in a prejudice in the minds of the jurors. Therefore, the leading and sometimes repetitious questions used by the prosecution were not so prejudicial as to have caused a "gross injustice" and deny the appellant a *247 fair trial. We, therefore, find no reversible error committed by the trial court.

II. WHETHER THE TRIAL COURT ERRED AND VIOLATED SMOTHERS'S RIGHT TO CROSS-EXAMINATION AND CONFRONTATION OF A WITNESS.
¶ 12. The next assignment of error was that the trial court committed error in not allowing Smothers the right to confront and cross-examine the confidential informant who had been listed as a witness for the State. Smothers claimed he suffered prejudice when he was prevented from presenting to the jury a theory of defense as to the predisposition to commit the crime through the confidential informant and likewise prevented from exploring the confidential informant's biases and prejudices which arose from her financial gain resulting from her involvement as an informant for the government. This argument is without merit.
¶ 13. In presenting the State's case, the prosecution chose not to call the confidential informant as a witness. Since the informant was not put on the stand, the trial court did not deprive Smothers of his right to confront and cross-examine said witness. "Neither the appellant, nor the court, instructs the State, or any other party to litigation, what witnesses that party shall put on the stand or how that party shall present its case." Hickson v. State, 512 So.2d 1, 3 (Miss.1987); Ahmad v. State, 603 So.2d 843, 847 (Miss.1992).
¶ 14. At the trial, Smothers was allowed to call the confidential informant as his own witness and at that time would have had the opportunity to develop his theory. The trial court also granted Smothers additional time to interview the informant. During the interview, the informant refused to talk with counsel for Smothers. When counsel for Smothers returned to court he presented this information to the court.
¶ 15. Ultimately, counsel for Smothers chose not to present additional evidence by calling the informant as their own witness. Counsel for Smothers failed to raise any objections and subsequently rested Smothers's case. Since Smothers never raised an objection to the trial court relative to the informant's lack of cooperation, the trial court could have committed no error because the appellant never brought it in issue for the trial court to make a ruling. Where an appellant did not raise a specific objection at trial, he may not do so for the first time on appeal. To preserve an error for review on appeal, there must be a contemporaneous objection. Smith v. State, 530 So.2d 155, 161-62 (Miss.1988). A review of the record does not show an objection having been made on the part of Smothers pertaining to lack of cooperation by the confidential informant. Therefore, we find that no error was committed by the trial court.

III. WHETHER THE TRIAL COURT ERRED IN DENYING SMOTHERS A JURY INSTRUCTION BASED ON ENTRAPMENT.
¶ 16. The last assignment of error in the case is that the trial court committed error in denying Smothers a jury instruction based on entrapment. Entrapment is defined as the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense. McLemore v. State, 241 Miss. 664, 675, 125 So.2d 86, 91 (1960). The defense of entrapment is affirmative, and the burden rests on the defendant to prove that circumstances exists to establish such a defense. Bush v. State, 585 So.2d 1262, 1264 (Miss.1991). A "defendant cannot rely on the fact that an opportunity was intentionally given him to commit crime which originated in the mind of the accused." McLemore, 125 So.2d at 91. The fact that the confidential informant and Officer Russell furnished the opportunity is no defense. Id.
¶ 17. At trial, Smothers did not establish a prima facie case of entrapment. *248 The testimony given by Officer Russell at the trial demonstrated that Smothers was familiar with the risks associated with drug transactions, but Smothers chose to take those risks. The situation in Smothers is similar to the situation in Pace v. State, 407 So.2d 530, 532 (Miss. 1981), abrogated on other grounds by Hopson v. State, 625 So.2d 395 (Miss. 1993). In Smothers's situation, "it took only a suggestion, with little persuasion and no coercion," to interest Smothers in selling cocaine to Officer Russell. The mere soliciting of the crime by Officer Russell was not enough to constitute entrapment.
¶ 18. At trial, Officer Russell had testified that Smothers took several intermediate actions to try and avoid any legal ramifications relative to his acts of selling the cocaine. One example of a precautionary measure by Smothers was the fact that Smothers admonished the confidential informant for mentioning "that stuff" while they were on the telephone arranging a time and place for the informant to purchase the drugs. Additionally, on the second transaction, Smothers was very reluctant to deal personally with Officer Russell. Smothers inquired as to whether Officer Russell was a police officer. Furthermore, Officer Russell was wearing what appeared to be a pager and in fact was a wire. Smothers was suspicious of the pager believing that it might be a wire and required Officer Russell to remove the pager for Smothers's inspection. It was at this point Officer Russell stated, "[I]f you are not comfortable dealing with me, that is fine. Let's just blow the whole deal off." Officer Russell started walking away, and Smothers summoned Officer Russell back and requested that he put his pager up and come back upstairs. Officer Russell returned back upstairs where Smothers weighed the cocaine and gave Officer Russell a pager number for future transactions and instructed him to ask for him by the name of "John." Furthermore, on the third occasion, Officer Russell had arranged to meet Smothers at a local parking lot. Once Smothers arrived at the parking lot, Smothers felt there was too much activity in the parking lot and required Officer Russell to follow him to a second destination before allowing Officer Russell to purchase the crack cocaine. In reviewing the record and the aforementioned facts, it is apparent that Smothers always had ready access to the cocaine he sold Officer Russell and was aware of the dangers of selling the substance. Even though Smothers was suspicious and was given the opportunity not to deal with Officer Russell, Smothers had the predisposition to commit the criminal acts and became victim to his own poor judgment.
¶ 19. At trial, counsel for the appellant argued that Smothers was entitled to an entrapment jury instruction due to the fact that the police and DEA and law enforcement initiated the contact with Smothers to consummate the drug deal. However, it is the law in Mississippi that the government's first soliciting or merely providing an opportunity for commission of a crime is insufficient to establish entrapment. Pace v. State, 407 So.2d 530, 532 (Miss.1981). This principle was reiterated in Walls v. State, 672 So.2d 1227, 1231 (Miss.1996), where it stated an entrapment instruction is not necessary where a defendant was merely "asked to sell the substance and he was caught." The record clearly reflects this to be the case and the record failed to support a prima facie case of entrapment. We, therefore, find no reversible error by the trial court.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION ON TWO COUNTS OF THE SALE OF COCAINE AND TWO CONSECUTIVE THIRTY YEAR SENTENCES IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
*249 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR.