BRIDGES, P.J.,
for the Court.
¶ 1. Reginald Lamont Sweet was convicted in the Warren County Circuit Court of possession of thirty grams or more of cocaine. He appeals, asserting five assignments of error:
I. THAT THE APPELLANT WAS DENIED HIS RIGHT OF CONFRONTATION OF THE ANONYMOUS ACCUSER RELIED ON BY LAW ENFORCEMENT.
II. THAT THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF PRIOR BAD ACTS OF APPELLANT.
III. THAT THE TRIAL COURT ERRED REMOVING A JUROR PANEL [sic] THAT HAD BEEN PREVIOUSLY REINSTATED PURSUANT TO A BATSON OBJECTION.
IV. THAT TRIAL COURT WAS IN ERROR IN FAILING TO SUSTAIN APPELLANT’S MOTION TO SUPPRESS EVIDENCE.
V. THAT THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no error, we affirm.
FACTS
¶ 2. Sweet had previously entered a guilty plea in the circuit court to a charge of possession of cocaine with intent to distribute, and at the time of his arrest and trial in the present case was on post-release supervision from the previous guilty plea. When entering his plea, Sweet executed a consent to future searches and' agreed to cooperate with future police investigations. On August 13, 2002, Officer Jeff Merritt, of the Vicksburg Police Department, received a telephone call to his personal cell phone from a person, whose identity is not shown in the record, but who was personally known to Merritt, telling him that Sweet was in possession of a large amount of crack cocaine and was driving a rental truck painted maroon over silver. Officer Merritt and three other police officers immediately left the police station and drove, with haste and blue *738 lights, to the area in which Sweet was said to be driving. Merritt was familiar with Sweet from his previous arrest, and Merritt saw Sweet driving a vehicle fitting the description given by the unidentified caller.
¶ 3. Sergeant Tom Wilson was one of the officers who left the police station with Merritt. Wilson also knew Sweet personally from the previous arrest. Wilson was driving a Ford Explorer that was not a police vehicle, but which was fitted with blue emergency lights. Wilson stated that he pulled up next to Sweet, who was stopped in the rented truck, made eye contact and waved. Sweet appeared to recognize Wilson, and drove off at a high rate of speed. A car chase ensued. As Wilson followed Sweet, he saw items being thrown from the truck. These were later recovered and found to be plastic bags containing cocaine. Eventually, Sweet slowed down and stopped. He was arrested and searched, but no drugs were found in the truck or on his person.
I. THAT THE APPELLANT WAS DENIED HIS RIGHT OF CONFRONTATION OF THE ANONYMOUS ACCUSER RELIED ON BY LAW ENFORCEMENT.
AND
IV. THAT TRIAL COURT WAS IN ERROR IN FAILING TO SUSTAIN APPELLANT’S MOTION TO SUPPRESS EVIDENCE.
¶ 4. Issues I and IV involve the same facts and will be discussed together.[1] Sweet contends that he was denied his right to confrontation as secured under the Sixth Amendment to the United States Constitution when the state relied upon a statement of an undisclosed person, who was not subject to cross-examination, to find a reasonable suspicion to investigate whether he was selling cocaine. The State contends this issue is waived because Sweet failed to raise it below at trial.
¶ 5. The record shows that there was a hearing held prior to the suppression hearing, but this first hearing was not transcribed. However, from Merritt’s testimony in the suppression hearing, it is clear that in the previous hearing Sweet was led to believe that the State learned of Sweet’s possession of cocaine from an anonymous telephone call. Merritt did not testify in that previous hearing, but in his testimony in the suppression hearing he stated he was familiar with what transpired in the first hearing. It was only during the suppression hearing that Sweet learned that Merritt received the phone call on his private cell phone, and that Merritt personally knew the informant having relied upon him in the past. During his testimony at the trial itself, Merritt agreed with the characterization of this individual as “a snitch.” The record further shows that during discovery Sweet had sought the reports of all witnesses as well as the names of all confidential informants, and the State failed to either provide the individual’s name or assert that while there had been a confidential informant, the individual’s name was not subject to discovery. Therefore, at the time of the suppression hearing, Sweet had no reason to suspect any police officer knew the identify of the individual who called, and in fact had been led to believe that this individual’s identity was unknown. Sweet’s motion to suppress was based on the allegation that:
he was illegally stopped in his automobile, and subsequently arrested and *739 charged ... in that no crime was committed in the presence of the arresting officers; the arresting officers did not have an arrest warrant and the officers relied on an anonymous telephone call with no indicia of reliability.
¶ 6. Sweet contends that this issue is not waived, because the entire thrust of his motion to suppress was that the information leading to his arrest was unreliable because the informant was unknown to the police. Essentially, Sweet argues that he was denied any opportunity to call and question the confidential informant. However, despite the State’s noncompliance with discovery, at the suppression hearing, Sweet failed to move ore tenus for the circuit court to compel discovery, and no written motion to compel was subsequently filed. Because the circuit court never ruled on whether the name of the confidential informant was subject to discovery, the confrontation issue is not properly before this Court. See, e.g. Campbell v. State, 883 So.2d 115(1118) (Miss.Ct.App.2004). Nevertheless, from the limited facts before us, Sweet would have difficulty in prevailing on that issue, because there is no indication that the confidential informant participated in any illegal act. See, e.g., Read v. State, 430 So.2d 832, 836 (Miss.1983). At any rate, because the circuit court made no ruling on this issue, we find the issue is proeedurally barred.
 ¶ 7. Even assuming the issue was not barred, there would be no merit to the confrontation issue. It is clear that the confidential informant did not testify. The right to confront witnesses does not extend beyond those witnesses called to testify against an accused. Smothers v. State, 738 So.2d 242 (¶13) (Miss.Ct.App.1998). Consequently, there is no merit to Sweet’s contention that he was denied his right to confrontation as secured under the Sixth Amendment to the United States Constitution.
¶ 8. Additionally, Sweet contends that the circuit court erred in denying his motion to suppress the cocaine recovered from the streets of Vicksburg. When a citizen informs law enforcement personnel of a possible crime and a description of a perpetrator, there exists a reasonable suspicion justifying an investigatory stop and questioning of an individual fitting that description. Walker v. State, 881 So.2d 820 (¶ 10) (Miss.2004) (citing Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In this case, the telephone call to Merritt gave the State a reasonable suspicion that justified the police in driving to Sweet’s location. The circuit court correctly found that this stop was not violative of Sweet’s constitutional rights as secured under the Fourth Amendment to the United States Constitution. Furthermore, the record shows that pursuant to the State accepting Sweet’s guilty plea in the previous crime involving narcotics, Sweet agreed to consent to being questioned and to searches. The circuit court correctly ruled that the plea agreement was an independent justification for the State to detain and/or search Sweet. Therefore, even assuming Sweet’s constitutional rights were implicated by the State attempting to detain and question him, there would be no merit to his argument because he had already entered his consent.
¶ 9. Sweet additionally contends that the cocaine was seized without an arrest or search warrant. However, the drugs were no longer in Sweet’s possession when they were recovered, as he had thrown them from the truck while attempting to elude the police. The drugs were recovered from the street, and Sweet was not personally searched until after he had been apprehended following the high *740 speed chase. When a suspect voluntarily discards contraband prior to arrest, the State may collect the contraband as evidence without offending the search and seizure protections of the Fourth Amendment to the United States Constitution. Harper v. State, 635 So.2d 864, 867 (Miss.1994). In this case, Sweet voluntarily surrendered the cocaine, and the circuit did not err in ruling it was admissible. There is no merit to the assignment of error going to the suppression of evidence.
II. THAT THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF PRIOR BAD ACTS OF APPELLANT.
¶ 10. Sweet filed a motion in li-mine to prevent the State from delving into his prior guilty plea in a separate crime involving narcotics. The circuit court granted the motion, and the State did not put forth evidence contrary to the circuit court’s ruling in its case-in-chief. However, Sweet testified on his own behalf. Prior to his testimony, the circuit court cautioned Sweet.
Now the initial stop was sufficient as far as the Court is concerned in terms of fourth amendment. And I don’t know what your guy is going to say, but my point is, that if he gets up here and says, look, I don’t know why these guys were after me.... Then it is, obviously, it’s probative for the State to say ... [t]his guy is acting like we are just stopping him out of the blue and he is some angel out here but we had a right to be looking at him.
¶ 11. Sweet testified that a pick-up truck with lights on it pulled up next to him. A window rolled down, and he saw someone, whom he did not recognize, point a gun at him, so he sped to get away. The two police officers who were in the pick-up truck were called on rebuttal. One testified he knew Sweet personally. The other testified that he had previously arrested Sweet for possession of cocaine in a charge unrelated to this case. Both officers testified that Sweet appeared to recognize them before he sped away. When a defendant opens the door to evidence of prior bad acts, there is no error for evidence rebutting the defendant’s own testimony. Watkins v. State, 874 So.2d 486(¶ 25) (Miss.Ct.App.2004). There was no error in admitting the testimony of the two police officers. This issue is without merit.
III. THAT THE TRIAL COURT ERRED REMOVING A JUROR PANEL [sic] THAT HAD BEEN PREVIOUSLY REINSTATED PURSUANT TO A BATSON OBJECTION.
¶ 12. Juror number 44, an African-American woman, did not respond to a voir dire question by the State asking if any members of the venire had been the victim of a violent crime. The State had information that the juror had in fact been the victim of a rape committed by a fireman employed by the City of Vicksburg. The State initially sought to challenge the juror for cause, but the circuit court denied the challenge. The State subsequently sought to utilize a peremptory challenge to the juror. The circuit court then questioned the juror in chambers where she did acknowledge being a victim of the violent crime. The circuit court then allowed the peremptory challenge. Sweet contended at trial, and contends on appeal, that if the juror’s status as a crime victim was insufficient to justify a challenge for cause, it should be insufficient to justify a peremptory challenge. Sweet contended that the juror’s decision to not be forthright in voir dire was to avoid embarrassment. However, the circuit court stated that even assuming that was true, and the juror did not intentionally deceive during *741 voir dire, it was still reasonable for the State to believe the juror might harbor some lingering animosity towards the City of Vicksburg. Ultimately, a jury was empaneled that included ten Caucasian and two African-American members.
¶ 13. A defendant asserting a Batson challenge must show that (1) he is a member of a cognizable racial group; (2) that the prosecutor exercised peremptory challenges to excuse a venire person of the defendant’s race; and (3) that there is an inference that the venire persons were excluded on account of their race. Towner v. State, 837 So.2d 221(¶ 6) (Miss.Ct.App.2003). Once these factors are shown the burden shifts to the state to show a race neutral reason for the exercise of a peremptory challenge, but the explanation is not required to rise to the same level as that for a challenge for cause. Collins v. State, 691 So.2d 918, 926 (Miss.1997). Determining whether the reason stated by the State is sufficiently race neutral is left to the circuit court’s discretion. Id. In this case, we cannot say the circuit court abused its discretion in accepting as a race neutral reason the State’s concern that the juror might harbor distrust towards city personnel stemming from being sexually assaulted by a fireman. There is no merit to this assertion of error.
V. THAT THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 14. To determine whether the jury verdict is against the weight of the evidence, we must “accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Crawford v. State, 754 So.2d 1211(¶ 30) (Miss.2000). In order to mandate a new trial, the verdict must be “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction ‘unconscionable injustice.’ ” Id. In this case, police officers testified they witnessed Sweet throwing bags out of the window of a truck while attempting to elude them, and these bags were recovered and found to contain cocaine. The circuit court did not err in denying Sweet’s motion for a new trial. There is no merit to this assignment of error.
¶ 15. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF 30 GRAMS OR MORE OF COCAINE, AND AS A SECOND OR SUBSEQUENT DRUG OFFENDER. SENTENCED TO A TERM OF 16 YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH 10 YEARS TO SERVE, BALANCE OF SIX YEARS SUSPENDED FOR FIVE YEARS, WITH DEFENDANT TO REPORT FOR POST RELEASE SUPERVISION BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS UPON RELEASE, AND FINE OF $10,000, IS AFFIRMED. SENTENCE IMPOSED SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. Sweet does not specify whether he is arguing his federal or state constitutional rights were violated. For the sake of clarity, we assume he bases his arguments upon the Fourth and Sixth Amendments to the United States Constitution.